IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 06-00124-01-CR-W-DW |
| KENNETH A. CRUM, ) | |
| ) | |
| Defendant. ) | |

### DETENTION ORDER

On April 6, 2006, the government moved to detain defendant Kenneth Crum pending trial, and on April 11, 2006, I held a detention hearing. I find by clear and convincing evidence that defendant poses a danger to the community and that no single condition of release or combination of conditions of release will reasonably assure the safety of the community.

I.  BACKGROUND

On April 5, 2006, an indictment was returned charging defendant with possessing a firearm after having been convicted of a felony. Defendant appeared before me for a first appearance on April 6, 2006. During the first appearance proceeding, counsel for the government filed a motion for a detention hearing and a motion to continue the hearing for three days. Those motions were granted, and defendant was remanded to the custody of the United States Marshal pending the hearing.

A detention hearing was held on April 11, 2006. Defendant was present and represented by Brent Hankins. The government was represented by Assistant United States Attorney Rudolph Rhodes. The parties stipulated that the court consider the information in the Pretrial Services Report of Pretrial Services Officer Susan Pinkerton as the testimony she would give, under oath, if called as a witness, with one exception. Defendant stated that he had never been to Baltimore and had no knowledge of the arrest in Baltimore. I agreed not to consider that arrest. Defendant called Kara Davis, Jackson County Probation Officer, and Richard Nadeau, psychotherapist, as witnesses. In addition, the defendant made the following proffer: On the issue of the Platte County case, October 05, that was a disposition date but the actual date of the violation was August 2005. The condition of being continued on probation, he was to continue with his mental health counseling as directed and receive alcohol treatment if directed. His probation officer did not choose to have him complete an alcohol program. Defendant is solely responsible for running all four of his companies.

The following exhibits were offered and admitted:

| | |
|---|---|
| P. Ex. 1 | Judgment from Platte County Circuit Court stating that as conditions of defendant's probation, he was not to possess any firearms and he was not to possess or consume any alcohol. |
| D. Ex. 1 | Resume of Richard Nadeau, Psychotherapist |
| D. Ex. 2 | Photograph of a collection of defendant's son's belongings |

D. Ex. 3    Photograph of defendant's son's truck

D. Ex. 4    Photograph of defendant's son's truck

## II.    FINDINGS OF FACT

On the basis of the information contained in the report of Pretrial Services Officer Susan Pinkerton and the evidence presented at the hearing, I find that:

1. Defendant, 41, grew up in Kennett, Missouri, and moved to the Kansas City area in 1991. Defendant maintains regular contact with his parents who live in Kennett, and he seldom has contact with his sister who lives in Florida.

2. Defendant has been married twice and divorced once. Defendant and his first wife had one son who passed away in November 2005 at the age of 22 as a result of a car accident. Defendant and his current wife have two children. He and his wife have been separated since fall 2005 and share custody of their children. Defendant's wife is not willing to sign a bond.

3. Defendant has a college education. He has owned KC Autoplex for the past eight years and earns between $15,000 and $20,000 per month. Defendant's financial assets and liabilities include the following:

| Assets | | Liabilities |
|---|---|---|
| Residence in Parkville | $498,000 | $140,000 mortgage |
| Residence in Liberty | $260,000 | $160,000 mortgage |
| Property | $380,000 | $230,000 mortgage |
| Property | $60,000 | $50,000 mortgage |
| 1995 Silverton boat | $100,000 | $80,000 owed |
| Mutual Funds | $100,000 | |
| Bank accounts | $15,000 | |

3

1989 Mustang $15,000
1990 Mustang $20,000
Seadoos (2) $10,000

Defendant's business is worth approximately $250,000.

4. Defendant is generally in good health. He began attending counseling about six months ago and has recently been attending weekly. Defendant used cocaine at age 17 and used ecstasy once while in college. He began using cocaine at the age of 24 and used it for ten years three or four times per month. Between ages 30 and 34, he used cocaine monthly. Defendant stated that he uses alcohol but his alcohol use is non-problematic. Defendant's wife believes he has an alcohol abuse problem, and she reported finding cocaine in their home on four separate occasions although defendant denied it was his cocaine.

5. Defendant's criminal history includes the following:

| Date | Charge | Disposition |
| --- | --- | --- |
| 10/15/93 | 1. Dist/Del/Manuf controlled substance<br>2. Possession of controlled substance<br>**(Felony)** | 1. Prosecution not filed<br>2. 3 years, SES, 5 years probation |
| 12/12/94 | Driving under the influence | Dismissed |
| 07/28/00 | Driving while intoxicated | SIS, 2 years probation |
| 05/06/03 | Driving while intoxicated | Unknown |
| 07/28/04 | 1. Domestic Assault III<br>2. Assault on law enforcement officer III | 1. 1 year, SES, 2 years probation<br>2. 1 year, SES, 2 years probation<br>Sentenced on 4/12/05 |

4

| | | |
|---|---|---|
| According to a probable cause statement, on 7/28/04, officers of the Parkville, MO Police Department were dispatched to defendant's residence in Parkville, MO on a domestic violence call. Upon arrival, officers contacted the defendant's wife, Gina Crum, who stated she and her husband had been arguing most of the evening when she went upstairs to take a shower. She stated she was in the shower with their three-year old daughter when the defendant entered the shower and grabbed her by the throat so hard that she nearly lost consciousness. She stated he then threw her against the wall. Officers found the defendant sitting in the bedroom on a chair holding his daughter. Officers advised the defendant he was under arrest at which time he gave his daughter to his older son. The defendant became verbally belligerent and failed to comply with officer's orders. The defendant was sprayed several times with oc spray; however, continued to struggle with officers, striking them with his clenched fist. The defendant's older son attempted to help his father and his son was placed under arrest. During the struggle with the officers, the defendant obtained the officer's baton and attempted to strike the officers with the baton. He was eventually forced to the floor and handcuffed. As part of his probation supervision, the defendant was ordered to not possess any firearms. On October 3, 2005, a probation violation hearing was conducted at which time the defendant was continued on supervision with the special condition for electronic shackling for 60 days, drug/alcohol treatment and psychiatric counseling. According to the defendant's wife, the violation was a result of the defendant pushing her down stairs. | | |
| 04/01/05 | Annoying telephone calls | SIS, 1 year probation |
| 05/23/05 | Violation of protection order | Dismissed |
| According to information in the government's file, Gena Claxton (defendant's girlfriend) filed for an ex parte order of protection on 4/1/05. The protection order was granted and a hearing set for 4/13/05, at which time a full order of protection was granted. On May 13, 2005, the victim responded to the police station to report a violation of the order of protection. She indicated that while in municipal court, she received two voice mails on her cell phone. She recognized the voice as that of her ex-boyfriend (defendant). On 8/17/05, the petitioner filed a request to terminate the full order of protection which was granted. | | |

6. During the homicide investigation of Charles C. Hogge, a consensual search of the defendant's business resulted in officers locating a Smith & Wesson .40 caliber handgun, two empty magazines for the handgun, three cell phones, and one box of

5

checks which belonged to the defendant's deceased son, Christopher S. Crum. Officers located a switch blade knife, a variety of ammunition, and seven unknown pills from a desk drawer in the business. A "Point Blank" ballistic vest was recovered from the defendant's automobile, behind the rear seat.

    7.    Officers of the Parkville, Missouri, Police Department were dispatched to the defendant's residence on March 20, 2003, due to a verbal disturbance. On May 6, 2003, the defendant was arrested for Driving While Intoxicated in Parkville, Missouri, at which time officers located a Taurus .357 Magnum 7-shot revolver and a Point Blank bullet proof vest. On July 9, 2004, the defendant's wife took three items, including a plastic bag and two folded pieces of paper containing cocaine, to the Parkville police station. She advised the items were taken from the defendant's clothes. On July 29, 2004, the defendant's wife requested officers complete a K-9 search of her residence for narcotics. Officers located a Sioux City, Iowa, police badge and a set of handcuffs in a safe that only the defendant and his wife had the combination to. The same evening, the defendant's wife took a handgun to the police department and stated that she had found the gun in the defendant's closet.

    8.    If convicted, defendant faces a possible prison sentence of ten years.

### III.    CONCLUSIONS

I find by clear and convincing evidence that no single condition or combination of conditions of release will reasonably assure the safety of the community. Defendant is

charged with possessing a .40 caliber handgun and two magazines for the handgun. In addition, he had a switchblade knife and a variety of ammunition, and police found a bullet-proof vest in his car. In July 2004, defendant's wife found a handgun in his closet, and police found in his home a Sioux City police badge and a set of handcuffs. In 2003, defendant was arrested for driving while intoxicated, and police recovered a .357 Magnum and a bullet-proof vest in his possession. Defendant has a history of illegal drug abuse and alcohol abuse, a problem which he currently denies. Although defendant's psychotherapist testified defendant was not an alcoholic, the therapist was unaware of many of defendant's probation violations involving alcohol; and he based his opinion on the fact that he did not see defendant going to bed drunk every night, although that appears to be speculation on his part. Defendant has a criminal history dating back almost 13 years and including drug offenses, assaultive behavior, and alcohol-related offenses. Although defendant's state probation officer testified he was a "model probationer", she has supervised him only since last fall, has seen him only once a month in her office, has never tested him for drugs, was unaware of some of his violations, and it is clear his possession of the .40 caliber weapon violates not only criminal statutes but the conditions of his probation. Defendant argued that the items seized by police belonged to defendant's recently-deceased son and that defendant kept those items as part of a shrine he built. The photographs of the shrine show that defendant has many framed pictures of his son above his desk. This explanation seems unlikely since a bulletproof vest was

7

found in defendant's car, not near the pictures of his son, and because the possession of the .40 caliber handgun is consistent with defendant's previous conduct of possessing firearms and bulletproof vests in the years prior to his son's death.

It is, therefore

ORDERED that the defendant be committed to the custody of the Attorney General or his authorized representative for detention pending trial. It is further

ORDERED that defendant be confined in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. It is further

ORDERED that the Attorney General or his authorized representative ensure that the defendant is afforded reasonable opportunity for private consultation with his counsel. It is further

ORDERED that, on order of a court in the Western District of Missouri, the person in charge of the corrections facility where defendant is confined deliver the defendant to a United States Marshal for his appearance in connection with a court proceeding.

    /s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 13, 2006